## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAEL P. MARTIN,

     Plaintiff,

v.                                      Case No. 8:25-cv-1848-KKM-TGW

THIRTEENTH JUDICIAL CIRCUIT COURT,
AND IN FOR HILLSBOROUGH COUNTY, FLORIDA,

     Defendant.

_____

## ORDER

Michael Martin moves for a temporary restraining order and preliminary injunction halting post-judgment proceedings in state court. Mot. (Doc. 6). For the below reasons, I deny that motion.

### I.   BACKGROUND

In 2015, 505 Panacea Enterprises, LLC, Martin's company, purchased Lots 1, 2, 3, 4, and Block E, all of which are in Block 26 of the Beach Park Plat in the Beach Park subdivision of Tampa. Verified Compl. (Doc. 1) ¶¶ 18–19, 28–29. To be considered buildable, Block E needs to be attached to a parcel with street

frontage. *Id.* ¶ 30. In 2017 and 2020, Panacea Enterprises asked the City of Tampa

for different lot configurations with respect to the five parcels. *Id.* ¶¶ 30–31. The

City granted both requests. *Id.* After December 2020, Block E was included in Tract

C:



*Id.* ¶ 32 (Tract C, represented as the land inside the highlighted area).

In January 2021, Martin acquired Tract C from Panacea Enterprises and

obtained approval from the City to build a two-story accessory structure on Block E.

*Id.* ¶¶ 32–34. This planned construction threatened the previously unobstructed

backyard view of Barbara Babbitt, who owns a tract of land including Lot 6 (pictured

above). *Id.* ¶¶ 35–36. So Babbitt, along with her husband, initiated a lawsuit in the

Thirteenth Judicial Circuit challenging the City's 2017 and 2020 approvals of the

lot reconfigurations, as well as Martin's construction of the structure on Block E. *Id.*

¶¶ 37–39.

After trial, the Judge Christopher Nash entered judgment declaring that the accessory structure "being built on Block E is illegal" because the City Council failed to approve a plat amendment "convert[ing] Block E from a non-buildable Block into a buildable portion of a residential lot." *Id.* ¶¶ 41–42; *see* (Doc. 1-11); Martin Decl. (Doc. 6-2) ¶ 5. Judge Nash also, through a permanent injunction, ordered Martin to "remove the [s]tructure and appurtenances thereto and restore Block E to the condition of a non-buildable Block." (Doc. 1-11) at 22. The Second District Court of Appeal affirmed. Verified Compl. ¶ 43.

Eighteen days after the Second District Court of Appeal entered its mandate, the Babbitts moved for entry of contempt because Martin failed to demolish the accessory structure. *Id.* ¶ 46. The motion also sought destruction of a pickleball court and pool on Block E. *Id.* After a hearing in February 2025, Judge Nash denied the Babbitts's motion, but, according to Martin, modified the final judgment by requiring Martin to file a "complete application for a demolition" of not only the accessory structure but also the pickleball court and pool. *Id.* ¶ 48; *see* (Doc. 1-12). Judge Nash then denied Martin's motion for a case management conference to address this alleged modification. Verified Compl. ¶ 49.

In March 2025, Judge Nash denied a renewed motion for contempt but again directed Martin to demolish the accessory structure, pickleball court, and the pool. *Id.* ¶ 50; *see* (Doc. 1-13). That same month, Martin moved to stay enforcement of the judgment proceedings to allow for time to replat Block E, but Judge Nash denied his motion. Verified Compl. ¶¶ 51–53; *see* Martin Decl. ¶¶ 13–14. In the same order, Judge Nash reserved ruling on a motion for sanctions that the Babbitts filed. Martin Decl. ¶ 14.

Martin next moved to disqualify Judge Nash and also moved to modify the permanent injunction because Martin initiated the replat process for Block E, but Judge Nash denied both motions. Verified Compl. ¶¶ 54–56. The City has now taken the position that Martin must comply with the final judgment and demolish the accessory structure, pool, and pickleball court before seeking a replat. *Id.* ¶ 63; *see* (Doc. 1-14). Recently, the Babbitts again moved for contempt. Martin Decl. ¶ 16. A contempt hearing is currently scheduled for July 23, 2025. *Id.* ¶ 17.

As a result of all this, Martin initiated this action in federal court, seeking a declaration that the Thirteenth Judicial Circuit violated the Fifth Amendment's Takings Clause, the Fourteenth Amendment's Due Process Clause, and Article X,

§ 6(a) of Florida's Constitution.[1] Verified Compl. ¶¶ 66–78; *see* 28 U.S.C. § 2201 (Declaratory Judgment Act). Martin also seeks injunctive relief requiring the State to pay for the lost value of his property and prohibiting Judge Nash, in the state court proceedings, from violating the United States and Florida Constitutions. Verified Compl. ¶¶ 72, 78; *see* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.").

Two days after filing his complaint, Martin moved for a temporary restraining order and preliminary injunction halting the state court proceedings. Mot. I asked Martin to address this Court's subject-matter jurisdiction, the applicability of the Anti-Injunction Act, the relevance of federalism and comity, and whether the existence of a state appellate remedy foreclosed injunctive relief. (Doc. 7). Martin responded. Resp. (Doc. 9).

---

[1] Article X, § 6(a) provides that "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."

## II.    LEGAL STANDARD

To receive a temporary restraining order or preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits"; (2) "irreparable injury" without an injunction; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *see Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam).

## III.    ANALYSIS

On the eve of a contempt hearing in state court, Martin seeks a federal court to enjoin state court proceedings. *See* Mot. at 25 (seeking an order preventing "the Thirteenth Judicial Circuit from proceeding any further in the State Court Action until the merits of this case can be decided"). Martin's requested relief is foreclosed by precedent.

First, Martin fails to convince that federal subject-matter jurisdiction exists. "Although [Martin's] request for declaratory judgment turns on an issue of federal law," *Patel v. Hamilton Med. Ctr., Inc.*, 967 F.3d 1190, 1194 (11th Cir. 2020), most Eleventh Circuit caselaw provides that a federal court does "not look to the face of

6

the declaratory judgment complaint in order to determine the presence of a federal question," *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992). Instead, "[f]ederal-question jurisdiction exists 'over a declaratory judgment action if a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law.' " *Patel*, 967 F.3d at 1194 (alteration adopted) (quoting *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003)); *accord City of Huntsville v. City of Madison*, 24 F.3d 169, 172 (11th Cir. 1994).

No such coercive action appears on the face of the complaint. And Martin's response fails to identify a coercive cause of action arising under federal law that the Thirteenth Judicial Circuit could bring against him. *Cf. Patel*, 967 F.3d at 1195 ("Patel's complaint does not establish that the Medical Center could bring *any* claim against him."). Instead, Martin claims that subject matter jurisdiction exists because the Thirteenth Judicial Circuit could seek declaratory relief against him in federal court. Resp. at 3. But a request for declaratory relief does not qualify as a "coercive action" for the purposes of this precedent. *See St. Augustine-St. Johns Cnty. Airport Auth. v. Boomerang, LLC*, No. 3:19-CV-573-34PDB, 2020 WL 6037188, at *6 (M.D. Fla. June 9, 2020) ("A coercive claim is a private right of action authorizing

the party to seek an immediately enforceable remedy, like monetary damages or an injunction."); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *cf. Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "may be persuasive," but "it is not ultimately coercive" (quotation omitted)).

To be sure, at least one Eleventh Circuit case framed the jurisdictional inquiry as whether a federal court would "also have jurisdiction to entertain [the plaintiff's] claim for injunctive relief." *McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir. 1986); *see id.* ("[I]f the federal issue [presented in a declaratory judgment action] would inhere in the claim on the face of the complaint that would have been presented in a traditional damage or coercive action, then federal jurisdiction exists over the declaratory judgment action." (second alteration in the original) (quoting 10A CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE AND PROCEDURE § 2767 (2d ed. 1983))). And Martin could, in theory, bring a claim for injunctive relief that arises under federal law based on the facts of his case. *See, e.g.*, 42 U.S.C. § 1983.

But even if federal subject matter jurisdiction exists, Martin's motion would still fail. Principles of comity and federalism "must restrain a federal court when

8

asked to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243 (1972). Congress has codified these principles, *see, e.g.*, 28 U.S.C. § 2283 (the Anti-Injunction Act), and the Supreme Court has applied them when determining the proper exercise of the federal judicial power, *see, e.g.*, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989). These authorities foreclose Martin's requested relief.

28 U.S.C. § 2283, the Anti-Injunction Act (AIA), prohibits a federal court from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The AIA's "core message is one of respect for state courts" and its three exceptions must be narrowly construed. *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

Martin relies on the second exception, arguing that without emergency injunctive relief, the July 23 contempt hearing "may defeat entirely" this Court's jurisdiction. Resp. at 4. Martin's contentions do not justify an injunction of the state

court proceedings. "Ordinarily, a federal court may issue an injunction 'in aid of its jurisdiction' in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or, (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250–51 (11th Cir. 2006); *accord Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 676 (11th Cir. 2012) (per curiam). The Eleventh Circuit has also recognized a third scenario: when the district court acts to protect its jurisdiction over a "complex, in personam lawsuit[]." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d at 1251; *see Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 881–82 (11th Cir. 1989).

None of these circumstances are present. This case was not removed from federal court, and it does not qualify under the "complex multi-state litigation" exception. Also, as Martin himself appears to recognize, the *in rem* exception does not apply. *See* Resp. at 6–7. This is not a case in which "a federal court is the first to acquire subject matter jurisdiction over an action *in rem*." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d at 1251; *see Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922) ("[W]here the jurisdiction of the state court has first attached, the federal

court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.").

Martin appears to contend that an injunction is necessary to preserve this Court's ability to adjudicate his requests for declaratory relief. Resp. at 7. But Martin does not explain why he believes this to be so. In any case, the Supreme Court has already rejected a similar argument. In *Imperial County v. Munoz*, the respondents argued that the "in aid of jurisdiction" exception applied because the "District Court was not barred from entering a declaratory judgment" and "a declaratory judgment unsupported by an injunction would be a nullity." 449 U.S. 54, 60 n.4 (1980). The Supreme Court rejected this argument, "since by its reasoning the exception, and not the rule, would always apply." *Id.* I reject Martin's argument for similar reasons. *See Delta Air Lines, Inc. v. McCoy Rests., Inc.*, 708 F.2d 582, 585 (11th Cir. 1983) ("Because of the sensitive nature of federal interference with state court litigation, the exceptions to the rule against injunctions . . . must be narrowly construed.").

Supreme Court precedent also counsels against granting Martin's requested relief. In *Juidice v. Vail*, the Supreme Court considered whether a federal court should abstain from reviewing the lawfulness of New York statutes governing civil

11

contempt proceedings. 430 U.S. 327, 331 (1977).[2] Because the "contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system," the Supreme Court concluded that federal-court involvement would "unduly interfere with the legitimate activities of the State." *Id.* at 336 & n.12 (cleaned up). Also, the plaintiffs "had an opportunity to present their federal claims in the state proceedings" and there was no evidence that "the state proceeding [was] motivated by a desire to harass or is conducted in bad faith." *Id.* at 337–38 (quotation omitted).

In this case, like in *Juidice*, the "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987). The state court's actions in this case involve "certain orders that are uniquely in furtherance of the state [court's] ability to perform [its] judicial functions," *New Orleans Pub. Serv., Inc.*, 491 U.S. at 368, and "exercise of the federal judicial power would disregard the comity between the States and the National Government," *Pennzoil Co.*, 481 U.S. at 11. Although Martin argues that the trial judge is unwilling to consider his

---

[2] *Juidice* did not present an Anti-Injunction Act problem because the plaintiffs proceeded under 42 U.S.C. § 1983. *See Mitchum*, 407 U.S. at 243.

constitutional arguments, Resp. at 12, he has not shown that "state procedural law barred presentation of [his] claims," *Moore v. Sims*, 442 U.S. 415, 432 (1979), or that he will be unable to present his claims moving forward in the litigation, *see Juidice*, 430 U.S. at 337 (requiring only "an opportunity" to present "federal claims in the state proceedings"). Martin has also not established that Judge Nash's post-judgment orders were "motivated by a desire to harass or [] conducted in bad faith." *Id.* at 338; *see* 17B CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE AND PROCEDURE § 4255 (3d ed. May 2025 update) ("In a very few cases a claim of bad faith or harassment has been accepted."). Finally, although Martin claims that "irreparable damage[]" will follow if state court proceedings are not enjoined, Resp. at 12, he has not demonstrated that this is one of those "very unusual situation[s]" where "an injunction is necessary to prevent great and immediate irreparable injury," *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986); *cf. Younger v. Harris*, 401 U.S. 37, 46 (1971) (explaining that "even irreparable injury is insufficient unless it is both great and immediate" (quotation omitted)). Accordingly, the Supreme Court's abstention precedent cuts against the requested relief.

Finally, the Florida appellate system provides Martin with an adequate remedy at law. *See Bolin v. Story*, 225 F.3d 1234, 1242–43 (11th Cir. 2000) (per curiam); *Scott v. Byrd*, No. 8:25-CV-1342-KKM-AEP, 2025 WL 1654699, at *2 (M.D. Fla. June 11, 2025) ("State appellate review is an adequate legal remedy."). Martin does not dispute that an order denying a motion to modify the state court's permanent injunction is appealable, *see* Resp. at 14; FLA. R. APP. P. 9.130(a)(3)(B),[3] and Florida caselaw provides that a "post-judgment contempt order is an appealable final order." *Kyle v. Carter*, 290 So. 3d 640, 641 (Fla. 1st DCA 2020). Accordingly, Martin is not entitled to injunctive relief in federal court. *See Sibley v. Lando*, 437 F.3d 1067, 1073–74 (11th Cir. 2005) (per curiam).[4]

---

[3] Although Martin's motion comes after entry of a final order, "non-final orders entered after a final order are no more or less reviewable than the same type of order would be if issued before a final order." *M.M. v. Fla. Dep't of Child. & Fams.*, 189 So. 3d 134, 139 (Fla. 2016) (quotation omitted).

[4] Martin argues that Florida's "limited post-judgment appellate remedies are brought based on a party challenging a state court ruling against another party, not a challenge to the state court's conduct itself." Resp. at 14. Martin does not explain the legal significance of this distinction.

14

## IV.   CONCLUSION

Martin fails to establish that he is entitled to the requested injunctive relief, which is precluded by both statute and precedent.[5]

Accordingly, Martin's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) is **DENIED**.

**ORDERED** in Tampa, Florida, on July 22, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

---

[5] In the light of the Anti-Injunction Act and other obstacles to the requested injunctive relief, I need not consider Martin's other arguments. I note, though, some skepticism concerning Martin's attempt to circumvent *Rooker-Feldman*. *See* Mot. at 18–19. *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). Martin insists that *Rooker-Feldman* does not apply because he is challenging only Judge Nash's post-judgment actions and because he could not have challenged the constitutionality of these actions before entry of final judgment. *See* Mot. at 18–19. But Martin fails to convince that Judge Nash's post-judgment orders requiring demolition of the structures on Block E are anything other than an explanation of what is required, in accord with the final judgment, to "restore Block E to the condition of a non-buildable Block." (Doc. 1-11) at 22. Martin presumably could have raised his Takings Clause argument "in the state trial court where judgment was entered or on appeal of that judgment." *Wood v. Orange County*, 715 F.2d 1543, 1548 (11th Cir. 1983). Viewed in this light, at least with respect to the Takings Clause, it appears that Martin is seeking a second bite at the appellate apple, this time in federal district court.

15