UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL P. MARTIN,

    Plaintiff,

v.                               Case No:   8:25-cv-01848-JLB-TGW

THIRTEENTH JUDICIAL CIRCUIT
COURT in and for HILLSBOROUGH
COUNTY, FLORIDA,

    Defendants.
_____/

## ORDER

      Plaintiff Michael P. Martin sues Defendant Thirteenth Judicial Circuit Court ("Thirteenth Judicial Circuit") for declaratory relief. (Doc. 1). Mr. Martin claims that the Thirteenth Judicial Circuit violated his rights under the takings clauses of the United States and Florida Constitutions and the Due Process Clause of the Fourteenth Amendment to the United States Constitution through its post-judgment orders in his Florida state court case. (*Id.*). Defendant Thirteenth Judicial Circuit now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 16). Upon careful review, the Thirteenth Judicial Circuit's Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## BACKGROUND[1]

Mr. Martin is the owner of 505 Panacea Enterprises, LLC ("Panacea Enterprises"). (Doc. 1 at ¶ 29). In 2015, Panacea Enterprises purchased five parcels of land—Lots 1, 2, 3, 4, and Block E—within Block 26 of the Beach Park Plat in the Beach Park subdivision of Tampa. (*Id.*). In 2017 and 2020, Panacea Enterprises sought permission from the City of Tampa to reconfigure the five parcels into three single-family lots (*id.* at ¶¶ 30–31), and the City of Tampa granted its permission both times. (*Id.*). Thus, "Tract C" was created, comprised of Block E, Lot 4, and sections of Lot 3. (*Id.* at ¶ 30). This tract reconfiguration was notable because, to be considered buildable under the City Code, Block E needed to be attached to a parcel that had street frontage. (*Id.* at ¶ 31).

In 2021, Mr. Martin acquired Tract C from Panacea Enterprises. (*Id.* at 32). He obtained a permit from the City of Tampa to begin construction on a two-story accessory structure on Block E. (*Id.* at ¶ 34). This construction upset his neighbors, Mrs. Babara Babbitt and her husband, Mr. Gordon Babbitt ("the Babbitts"), who sued the City of Tampa in the Thirteenth Judicial Circuit. (*Id.* at ¶¶ 35–37). Their suit challenged the City of Tampa's 2017 and 2020 approvals of Panacea Enterprises's reconfigurations, along with Mr. Martin's construction of the accessory structure. (*Id.* at ¶ 37).

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the Complaint. (*See* Doc. 1).

After a June 2023 state jury trial, Judge Christopher Nash of Florida's Thirteenth Judicial Circuit entered final judgment in favor of the Babbitts. (*Id.* at ¶ 41). The judgment declared Mr. Martin's construction of the accessory structure illegal, and it issued an injunction directing Mr. Martin to "remove the Structure and appurtenances thereto and restore Block E to the condition of a non-buildable Block." (*Id.*). As Judge Nash explained, "Block E was platted . . . as a non-residential, non-buildable Block" and "the only way that Block E could be transformed into a buildable residential area [was] through a plat amendment approved by City Council." (*Id.* at ¶ 42).

Mr. Martin appealed Judge Nash's final judgment to Florida's Second District Court of Appeal, but the appellate court *per curium* affirmed Judge Nash's decision. (Id. at ¶ 43).

On December 27, 2024, the Babbitts moved for the entry of contempt against Mr. Martin because he had not demolished the structure yet. (*Id.* at ¶ 46). In their motion, the Babbitts also sought the removal of a pickleball court and a pool on Block E. (*Id.*). According to Mr. Martin, this was the first time that Babbitts had raised those issues. (*Id.*). Judge Nash held a hearing on the Babbitts' motion for sanctions, and he denied the motion. (*Id.* at ¶ 48). However, Mr. Martin claims that Judge Nash modified his final judgment at this hearing, with no notice to Mr. Martin, by requiring him to "file a complete application for a demolition permit to demolish the Structure, the swimming pool, and the pickleball court." (*Id.*). Mr.

Martin moved for a case management conference to address that issue, but Judge Nash denied the motion. (*Id.* at ¶ 49).

In March 2025, the Babbitts moved again for contempt against Mr. Martin. (*Id.* at ¶ 50). Judge Nash denied that motion too, but he directed Mr. Martin to "immediately comply with the Final Judgment," including the "demolition of the structure, the pickleball court, and the pool." (*Id.*).

Later that month, Mr. Martin filed a motion to stay the state court's final judgment, seeking permission for him to replat Block E into a buildable parcel, consistent with Judge Nash's final judgment. (*Id.* at ¶ 51). He scheduled a hearing on the motion, but Judge Nash denied the motion with no hearing or explanation. (*Id.* at ¶ 52-53).

On May 12, 2025, Mr. Martin moved to disqualify Judge Nash because Mr. Martin believed Judge Nash was biased against him. (*Id.* at ¶ 54). Mr. Martin noted that Judge Nash had granted hearings to the Babbitts on their motions but none to him. (*Id.*). He also believed Judge Nash was denying him a due process right to be heard on matters concerning his property. (*Id.*). Judge Nash denied Mr. Martin's motion to disqualify. (*Id.*).

Finally, on June 5, 2025, Mr. Martin moved to modify the state court's permanent injunction because he had contacted the City of Tampa to replat Block E into a buildable block. (*Id.* at ¶ 55). Judge Nash denied that motion. (*Id.* at ¶ 56). Since then, the City of Tampa has taken the position that it will not replat Block E

until Mr. Martin removes the accessory structure, pool, and pickleball court. (*Id.* at ¶ 63).

These events led Mr. Martin to sue the Thirteenth Judicial Circuit of Florida in this Court, seeking declaratory relief for alleged violations of his federal and state constitutional rights. (*See generally id.*). He moved for a temporary restraining order, which the Court denied. (Docs. 6, 13). The Thirteenth Circuit now moves to dismiss based on lack of subject matter jurisdiction and failure to state a claim. (Doc. 16).

## LEGAL STANDARD

Courts must always address threshold jurisdictional issues first, since a court cannot reach questions that it never had jurisdiction to entertain. *Boone v. Sec'y, Dep't Of Corr.*, 377 F.3d 1315, 1316 (11th Cir. 2004). "Federal courts are courts of limited jurisdiction," and subject matter jurisdiction must be established before a case can proceed on the merits. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) are either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quotation omitted). Factual attacks, however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside

the pleadings, such as testimony and affidavits are considered." *Id.* (quotation omitted).

"[T]he burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim . . . ." *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1247 n.2 (11th Cir. 2005). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## DISCUSSION

The Thirteenth Judicial Circuit argues, among other things, that the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. 16). Specifically, the Thirteenth Judicial Circuit argues that the *Rooker-Feldman* doctrine prevents Mr. Martin from seeking relief in federal court. (*Id.* at 4). Upon careful review, the Court agrees with the Thirteenth Judicial Circuit and grants its motion to dismiss. Because the *Rooker-Feldman* doctrine is sufficient to dispose of this case, the Court need not address the Thirteenth Judicial Circuit's other arguments.

The *Rooker-Feldman* doctrine applies to cases involving "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It is a narrow doctrine that applies "[o]nly when a losing state court

litigant calls on a district court to modify or 'overturn an injurious state-court judgment.'" *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021). In such cases, the district court cannot exercise subject matter jurisdiction because a district court's jurisdiction is original, not appellate. *Exxon Mobil Corp.*, 544 U.S. at 283.

The Eleventh Circuit has explained that the *Rooker-Feldman* doctrine must be confined to the facts of the cases from which it draws its name, warning district courts to use caution when dismissing a case under that doctrine. *See Behr*, 8 F.4th at 1208, 1210.

In *Rooker*, the plaintiff asked the district court to declare a state court decision null and void for violating the Contracts Clause, the Fourteenth Amendment's Due Process Clause, and the Equal Protection Clause. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15 (1923). The Supreme Court held that the district court had no jurisdiction to decide the case because only the Supreme Court may reverse or modify a state-court judgment. *Id.* at 416. Similarly, in *Feldman*, the plaintiffs sought review of adverse decisions from the District of Columbia Court of Appeals. The Supreme Court held that the district court lacked jurisdiction to overturn the District of Columbia court's judgments or to rule on whether it acted arbitrarily and capriciously. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 463, 486 (1983); *Behr*, 8 F.4th at 1211. Rather than being a full bar against relitigating *any* issue that was present in the state court proceedings, *Rooker-Feldman* bars a claim "only when the injury asserted is 'caused by the judgment itself.'" *Thomas v.*

*Bartholomew*, 2025 WL 1179583, at *7 (11th Cir. 2025) (quoting *Behr*, 8 F.4th at 1212).

The Eleventh Circuit's decision in *May v. Morgan County, Georgia* provides guidance in this case. 878 F.3d 1001 (11th Cir. 2017). There, a homeowner sued her county for declaratory relief after it refused to grandfather application of a new ban on short-term rentals to the homeowner's property. *Id.* at 1003. First, she sued the county in state court, and the trial court dismissed her case for failure to exhaust her administrative remedies and for being time-barred. *Id.* She then petitioned the county multiple times to rezone her property or declare that she had a right to offer short-term rentals, which the county refused to do. *Id.* at 1004. Finally, the homeowner brought declaratory relief and Section 1983 claims in federal court under the slightly different argument that the county had violated her grandfathered constitutional rights to offer short-term rentals. *Id.* The district court granted the county's motion to dismiss based on *Rooker-Feldman*, and the Eleventh Circuit affirmed. *Id.* at 1004, 1007. As the Eleventh Circuit's opinion explained, "[a]lthough narrow in its application, a state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim. Pretext is not tolerated." *Id.* at 1005. Because the homeowner's lawsuit sought to challenge the merits of an earlier state-court final judgment, the district court had no jurisdiction to decide the issue. *See id.*

Here, Mr. Martin's case falls within the Supreme Court's description of *Rooker-Feldman*. Mr. Martin is a "state-court loser[] complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.  Specifically, the state court decided its case against Mr. Martin, entered final judgment, and has issued orders directing Mr. Martin to comply with its judgment.  (Doc. 1 at ¶¶ 41–49).  Mr. Martin has now brought a case in federal court seeking relief from injuries caused by the orders directing him to comply with the state court's judgment.  (*See id.* at ¶¶ 67–68, 74–75).

The Court lacks subject matter jurisdiction over Mr. Martin's case under the *Rooker-Feldman* doctrine because Mr. Martin asks the Court to reconsider the scope of the Thirteenth Judicial Circuit's final judgment.  Mr. Martin's Complaint asks the Court to issue "declaratory relief under 28 U.S.C. §§ 2201 & 2202 and the United States and Florida Constitution[s], as well as any other necessary or proper relief, including an injunction."  (Doc. 1 at ¶ 2; *see also* Doc. 1 at ¶ A–E).  While he stresses that he seeks relief "only as to the Thirteenth Judicial Circuit Court's conduct following the Second District Court of Appeal's mandate in December 2024," (*Id.* at ¶ 45), the substance of his argument to this Court is expansive.

Mr. Martin's argument is that the pickleball court and pool were not included within the state court's final judgment that ordered him to "remove the Structure and appurtenances thereto and restore Block E to the condition of a non-buildable Block."  (*Id.* at ¶ 41).  He claims that Judge Nash's post-judgment orders took his property by expanding the scope of that final judgment and denying him the opportunity to replat Block E.  (*Id.* at ¶¶ 67–68, 74–75).  However, to rule on those

issues, this Court would need to interpret the scope of the state court's final judgment.  In doing so, this Court would risk modifying or overturning that judgment, which is expressly what the *Rooker-Feldman* doctrine forbids.  *See Behr*, 8 F.4th at 1210; *Rooker*, 263 U.S. at 416.  Additionally, interpreting the scope of the final judgment would be especially precarious here, where the state court's actions indicate that it does not agree with Mr. Martin's interpretation of its judgment. (See Doc. 1 at ¶¶ 49–53).

This is not a case, like *Behr*, where the plaintiffs challenged a collateral issue that was present during the state proceedings.  *See Behr*, 8 F.8th at 1213.  Instead, like the homeowner in *May* and the plaintiff in *Rooker*, Mr. Martin cannot collaterally challenge the merits or scope of the state court's final judgment by bringing a slightly different argument in federal court.  *See May*, 878 F.3d at 1005–06; *Rooker*, 263 U.S. at 415–16.  His relief must be found through the state court system.  This Court has no jurisdiction to consider his arguments that the pickleball court and swimming pool were not included within the state court's final judgment.

Finally, as to Mr. Martin's argument that Judge Nash denied him due process by not granting him a hearing on his motions, the Court notes that the state court considered the merits of Mr. Martin's motions and rejected them.  A hearing was not required.  Therefore, the Court need not address the issue further.

Accordingly, it is **ORDERED** that:

1. The Thirteenth Judicial Circuit's Motion to Dismiss is **GRANTED**.

2. Plaintiff's Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

3. The Clerk of Court is **DIRECTED** to terminate any pending deadlines and motions and close the file.

**ORDERED** in Tampa, Florida, on November 21, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE